# EXHIBIT A

| | |
|---|---|
| 7TH JUDICIAL DISTRICT COURT, GUNNISON COUNTY, COLORADO<br>200 E. Virginia Avenue<br>Gunnison, Colorado 81230<br><br>**PLAINTIFF:** DAVID CANO, Individually and for Others Similarly Situated<br><br>**v.**<br>**DEFENDANT:** 6TH MERIDIAN SPECIALTIES LLC d/b/a PHOENIX MINING | DATE FILED<br>August 29, 2025 12:53 PM<br>FILING ID: 6B3CA07E25392<br>CASE NUMBER: 2025CV30030<br><br>□ COURT USE ONLY □ |
| Attorneys for Plaintiff:<br><br>Brian D. Gonzales<br>Atty. Reg. # 29775<br>**BRIAN D. GONZALES, PLLC**<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Phone: (970) 214-0562<br>BGonzales@ColoradoWageLaw.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax: (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax: (713) 877-8065<br>rburch@brucknerburch.com<br><br>**Pro hac vice applications forthcoming* | Case Number:<br><br>Ctrm/Div: |

**ORIGINAL CLASS ACTION COMPLAINT & JURY DEMAND**

## SUMMARY

1. David Cano (Cano) brings this class action to recover unpaid wages and other damages from 6th Meridian Specialties LLC d/b/a Phoenix Mining (Phoenix).

2. Phoenix employed Cano as one of its Hourly Employees (defined below) in the West Elk underground coal mine in Gunnison County, Colorado.

3. Cano and the other Hourly Employees regularly work more than 40 hours in a week and occasionally more than 12 hours in a day.

4. Phoenix pays Cano and the other Hourly Employees by the hour.

5. However, Phoenix does not pay Cano and the other Hourly Employees for all hours worked, including overtime hours.

6. Instead, Phoenix requires Cano and the other Hourly Employees to suit out in protective clothing and safety gear necessary to perform their jobs and gather and prepare tools and equipment necessary to perform their jobs, while on Phoenix's premises, "off the clock."

7. Likewise, Phoenix requires Cano and the other Hourly Employees to change out of and store their safety gear and protective clothing, store their tools and equipment, and wash-up, while on Phoenix's premises, "off the clock."(¶¶ 6-7 together, Phoenix's "pre/post shift off the clock policy").

8. But Phoenix does not pay Cano and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing, gathering and storing tools and other equipment, and washing-up, "off the clock," before and after their shifts.

9. Additionally, Phoenix rounds Cano's and the other Hourly Employee's work hours for its own primary benefit (Phoenix's "rounding policy").

10. Finally, Phoenix pays Cano and the other Hourly Employees "per diems" that it fails to include in their regular rates of pay for overtime purposes (Phoenix's "per diem pay scheme").

11. But the "per diem" is not designed to reasonably estimate and reimburse expenses the Hourly Employees incur.

12. Indeed, Cano and other Hourly Employees commute to and from their permanent residences to work each workday.

13. Phoenix's pre/post shift off the clock policy, rounding policy, and per diem pay scheme violate the Colorado Wage Claim Act (CWCA), Colorado Minimum Wage Act (CMWA), and their implementing regulations (COMPS Orders) by failing to compensate Cano and the other Hourly Employees for all hours worked and at 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek (and 12 in a workday).

14. Additionally, Phoenix does not authorize, permit, or make available uninterrupted and duty-free meal periods to Cano and the other Hourly Employees for each workday that exceeds 5 hours.

15. Likewise, Phoenix does not authorize or permit Cano and the other Hourly Employees to take a *bona fide* 10-minute rest period for each 4 hours worked or major fraction thereof.

## JURISDICTION & VENUE

16. This Court has subject matter jurisdiction pursuant to COLO. CONST. ART. VI § 9(1) because this case arises under Colorado law and Phoenix's violative conduct occurred in Colorado.

17. This Court has personal jurisdiction over Phoenix because Phoenix is a Colorado limited liability company headquartered in Colorado and based on its substantial business operations in Colorado that form the basis of this class action. C.R.S. § 13-1-124.

18. Venue is proper pursuant to C.R.C.P. 98 because some part of the claim arose in Gunnison County.

19. Specifically, Phoenix employed Cano and other Hourly Employees in Gunnison County pursuant to its pre/post shift off the clock policy, rounding policy, per diem pay scheme, and/or failed to provide or make available meal and/or rest periods.

20. This matter is properly in this Court because: (1) the aggregate amount in controversy is under $5 million; (2) the size of Cano's proposed class is fewer than 100 individual members; (3) more than two-thirds of Cano's proposed class are Colorado citizens; (4) Phoenix is a Colorado citizen; (5) Cano's and the other Hourly Employees' claims occurred in Colorado and arise under Colorado law, rather than any federal statute; and (6) there is no embedded federal question or issue in Cano's and the other Hourly Employees' claims.

## PARTIES

21. Phoenix employed Cano as an equipment operator from approximately February 2023 until February 2024.

22. Throughout his employment, Phoenix subjected Cano to its pre/post shift off the clock policy, rounding policy, per diem pay scheme, and likewise did not provide or make available *bona fide* meal and/or rest periods.

23. Cano brings this class action on behalf of himself and similarly situated Phoenix employees it subjected to its pre/post shift off the clock policy, rounding policy, per diem pay scheme, and/or failed to provide or make available compliant meal and/or rest periods.

24. The putative Colorado class of similarly situated employees is defined as:

**All hourly employees who worked for Phoenix in Colorado during the last six years through final resolution of this action. (the "Hourly Employees").**

25. Phoenix is a Colorado limited liability company with its principal place of business in Grand Junction, Colorado.

26. Phoenix may be served with process through its registered agent: **Ryan M. Tharp 1801 California St., Ste. 2600, Denver, Colorado 80202**, or wherever he may be found.

## FACTS

27. Phoenix is a mining staffing company that touts its ability to complete "turnkey projects small and large on the surface and underground in metal/nonmetal and coal [mines]."[1]

28. To achieve its business objectives, Phoenix hires workers like Cano and the other Hourly Employees.

29. Phoenix pays Cano and the other Hourly Employees by the hour.

30. For example, Phoenix paid Cano approximately $32 an hour.

31. Throughout his employment, Cano regularly worked more than 40 hours in a workweek (and occasionally more than 12 hours in a workday).

32. Indeed, throughout his employment, Cano typically worked approximately 10 hours a day and 7 days a week (70 hours a workweek) "on the clock."

33. But Phoenix recorded Cano's hours in accordance with its rounding policy.

34. Specifically, Phoenix "recorded" Cano's "on the clock" hours through the timekeeping system it selected and controlled to reflect only his prescheduled, 10-hour shift.

35. Thus, Phoenix's records reflect the number of "on the clock" hours Cano worked each day and week as Cano's prescheduled 10-hour daily shifts.

36. As an equipment operator, Cano's job duties included operating heavy machinery in the mine to extract and transport ore, rock, and other materials, as well as move these materials from one area of the mine to another, as directed, to support mining operations.

37. Cano's job duties likewise included donning and doffing his safety gear and protective clothing, gathering, preparing, and storing tools and other equipment, and washing up, "off the clock," on Phoenix's client's premises, before and after his scheduled shifts.

---

[1] https://6thmsllc.com/phoenix-mining (last visited August 5, 2025).

38. But throughout his employment, Phoenix did not pay Cano for all his hours worked.

39. Instead, throughout his employment, Phoenix subjected Cano to its pre/post shift off the clock policy.

40. Specifically, Phoenix required Cano to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective and fire retardant clothing, ear protection, steel toed boots, safety glasses, gloves, dust mask, miner belt, gas detector, tracker, and self-contained self-rescuer) and gather and prepare tools and equipment necessary to perform his job duties, such as hand tools and maintenance supplies, all "off the clock," on Phoenix's client's mine premises and without compensation.

41. This took Cano approximately 45 minutes each workday.

42. Cano could not perform his job duties in accordance with Phoenix's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

43. Indeed, much of the gear Cano utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

44. The donning of protective clothing and safety gear and gathering other tools and equipment were therefore integral and indispensable work duties for Cano.

45. Likewise, Phoenix required Cano to remove and store his safety gear, protective clothing, other tools and equipment, and wash up each day after his shift, all "off the clock," while still on Phoenix's client's premises, and without compensation.

46. This took Cano approximately 30 to 40 minutes each workday.

47. Cano could not perform his job duties in accordance with Phoenix's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing his tools and equipment, and washing up each workday.

48. Cano could not safely perform his job duties in accordance with Phoenix's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

49. The removal and storage of safety gear and protective clothing, other tools and equipment, and washing up each day were therefore integral and indispensable work duties for Cano.

50. But under its pre/post shift off the clock policy, Phoenix did not compensate him for the same.

51. Thus, because of its pre/post shift off the clock policy, Phoenix failed to pay Cano wages for all hours worked, including overtime wages for hours worked in excess of 40 in a workweek and 12 in a workday.

52. Additionally, Phoenix did not authorize, permit, or make available to Cano duty-free, uninterrupted 30-minute meal periods during each shift exceeding 5 hours.

53. Cano does not receive duty-free, uninterrupted meal periods.

54. The nature of the work Cano performed did not make an uninterrupted meal period impractical.

55. But to meet Phoenix's strict productivity requirements, Phoenix regularly forced Cano to perform his regular work duties without a *bona fide* meal period. *See* 7 C.C.R. 1103-1 (5.1).

56. Phoenix failed to compensate Cano for his missed meal periods.

57. Similarly, Phoenix did not authorize and permit Cano to take *bona fide* 10-minute rest periods for every 4 hours worked or major fraction thereof. *See* 7 C.C.R. 1103-1 (5.2).

58. And Phoenix failed to compensate Cano for his missed rest periods.

59. Cano and the other Hourly Employees perform their jobs under Phoenix's supervision and use materials, equipment, and technology Phoenix approves and supplies.

60. Phoenix requires Cano and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

61. Cano's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Phoenix (and its clients).

62. At the end of each pay period, Cano and the other Hourly Employees receive wages from Phoenix that are determined by common systems and methods that Phoenix selects and controls.

63. Likewise, the other Hourly Employees typically work approximately 10 hours a day and 7 days a week (70 hours a week) "on the clock."

64. But, just as with Cano, Phoenix "recorded" the other Hourly Employees' hours as their prescheduled shifts rather than their actual hours worked, in accordance with its rounding policy.

65. And, just as with Cano, Phoenix fails to pay them for all their hours worked, including overtime hours.

66. Phoenix subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Cano.

67. Specifically, Phoenix requires them to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective and fire retardant clothing, ear protection, steel toed boots, safety glasses, gloves, miner belt, tracker, dust mask, gas detector, and SCSR), fundamentally necessary to performing their jobs and gather other tools and equipment, including hand tools, all "off the clock," on Phoenix's client's premises and without compensation.

68. And Phoenix requires them to remove and store their safety gear and protective clothing, as well as other gear, and wash up after their shifts, likewise, "off the clock" and on Phoenix's clients' premises.

69. And like Cano, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

70. But, like Cano, the other Hourly Employees are forced to perform this compensable work "off the clock" before and after their shifts.

71. Thus, just as with Cano, Phoenix does not pay the other Hourly Employees for this integral and indispensable work inextricably intertwined with their other job duties it requires them to perform, on its client's premises "off the clock," before and after their shifts.

72. And, just as with Cano, these job duties take the other Hourly Employees approximately an hour and 5 minutes to an hour and 15 minutes to complete each workday.

73. Additionally, just as with Cano, Phoenix does not authorize, permit, or make available to the other Hourly Employees work-free and uninterrupted 30-minute meal periods during shifts exceeding 5 hours.

74. Instead, like Cano, to complete their job duties in accordance with Phoenix's policies, procedures, standards, and expectations, the other Hourly Employees are forced to perform their regular work duties throughout their shifts.

75. And, as with Cano, the nature of the work the other Hourly Employees perform does not make uninterrupted meal periods impractical.

76. Phoenix fails to compensate the Hourly Employees for their missed meal periods.

77. Similarly, Phoenix does not authorize or permit the other Hourly Employees to take *bona fide* 10-minute rest periods for every 4 hours worked or major fraction thereof.

78. And Phoenix fails to compensate them for their missed rest periods.

79. Rather, like Cano, the other Hourly Employees spend their entire workdays working on behalf of Phoenix for its primary benefit.

80. Phoenix fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock," on its (or its clients') premises that Phoenix does not want performed.

81. And Phoenix knows, should know, or recklessly disregards whether Cano and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts.

82. Thus, Phoenix requires, requests, suffers, or permits Cano and the other Hourly Employees to work "off the clock," without compensation, on its (or its clients') premises, before and after their scheduled shifts.

83. Despite accepting the benefits, Phoenix does not pay Cano and the other Hourly Employees for the compensable work they perform "off the clock."

84. Additionally, Phoenix agreed to pay and subsequently pays Cano and the other Hourly Employees "per diems" payments of approximately $150 per day worked.

85. However, Phoenix did not include these payments in Cano's and the other Hourly Employees' regular rates of pay for overtime purposes.

86. But these "per diem" payments are not calculated to reimburse Cano and the other Hourly Employees for any expenses incurred on behalf of Phoenix.

87. Indeed, Cano and other Hourly Employees commute to and from their permanent residences each workday.

88. Thus, Phoenix failed to pay Cano and the other Hourly Employees at rates of at least 1.5 times their regular rates of pay, based on all remuneration, for all hours worked in excess of 40 in a workweek and/or 12 in a workday.

89. Under Phoenix's pre/post shift off the clock policy, rounding policy, per diem pay scheme, and failure to provide or make available meal and rest periods, Cano and the other Hourly Employees are denied wages, including overtime wages at the required rates, for all compensable hours work.

## Class Action Allegations

90. Cano brings his claims as a class action under the CWCA, CMWA, and COMPs Orders pursuant to C.R.C.P. 23.

91. Like Cano, the other Hourly Employees are victimized by Phoenix's pre/post shift off the clock policy, rounding policy, per diem pay scheme, and/or denied meal and rest periods.

92. Other Hourly Employees worked with Cano and indicated they were paid in the same manner, performed similar work, and were subject to Phoenix's same pre/post shift off the clock policy, rounding policy, per diem pay scheme, and/or denied meal and rest periods.

93. Based on his experience with Phoenix, Cano is aware Phoenix's pre/post shift off the clock policy, rounding policy, per diem pay scheme, and/or denied meal and rest periods were imposed on other Hourly Employees.

94. The Hourly Employees are similarly situated in the most relevant respects.

95. Even if their precise job duties and locations vary, these differences do not matter for the purpose of determining their entitlement to wages, including overtime wages at the required premium rate for all overtime hours worked.

96. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class treatment.

97. Rather, Phoenix's pre/post shift off the clock policy, rounding policy, per diem pay scheme, and denied meal and rest periods render Cano and the other Hourly Employees similarly situated for the purpose of determining their right to wages for all hours worked and overtime wages at the required rate, based on all remuneration, for all overtime hours worked.

98. Phoenix's records reflect the number of "on the clock" hours the Hourly Employees work each week.

99. Phoenix's records likewise reflect that it paid the Hourly Employees "per diems" each workday that it excludes from their regular rates of pay for overtime purposes.

100. The back wages owed to Cano and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

101. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Phoenix's records, and there is no detraction from the common nucleus of liability facts.

102. Therefore, the issue of damages does not preclude class treatment.

103. Cano's experiences are typical of the experiences of the other Hourly Employees.

104. Cano has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class treatment.

105. Cano has an interest in obtaining the unpaid wages owed to the other Hourly Employees under Colorado law.

106. Cano and his counsel will fairly and adequately protect the interests of the Hourly Employees.

107. Cano retained counsel with significant experience handling complex class action litigation.

108. Absent this class action, many Hourly Employees will not obtain redress for their injuries, and Phoenix will reap the unjust benefits of violating Colorado law.

109. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

110. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Phoenix.

111. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

112. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

113. Among the common questions of law and fact are:

a. Whether Phoenix imposed its pre/post shift off the clock policy on the Hourly Employees;

b. Whether Phoenix imposed its rounding policy on the Hourly Employees;

c. Whether Phoenix's pre/post shift off the clock policy and/or rounding policy deprived the Hourly Employees of wages, including overtime wages for overtime hours worked;

d. Whether Phoenix paid the Hourly Employees "per diems" that were not reasonably calculated to reimburse work expenses incurred;

e. Whether Phoenix failed to include these "per diems" in the Hourly Employees' regular rates of pay for overtime purposes;

f. Whether Phoenix failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

g. Whether Phoenix failed to provide meal and/or rest periods as required by Colorado law;

h. Whether Phoenix's decision not to pay the Hourly Employees wages, including overtime wages, at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

i. Whether Phoenix's violations were willful?

114. As part of its regular business practices, Phoenix intentionally, willfully, and repeatedly violated Colorado law with respect to Cano and the other Hourly Employees.

115. The Hourly Employees are known to Phoenix, are readily identifiable, and can be located through Phoenix's business and personnel records.

## PHOENIX'S VIOLATIONS WERE WILLFUL

116. Phoenix knew it employed the Hourly Employees.

117. Phoenix knew it was subject to Colorado law's wages, meal/rest break, and overtime provisions.

118. Phoenix knew Cano and the other Hourly Employees were its non-exempt employees entitled to wages for all hours worked, including overtime wages, and meal and rest breaks.

119. Phoenix knew Colorado law required it to pay non-exempt employees, including Cano and the other Hourly Employees, wages for all hours worked and overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek and 12 in a workday.

120. Phoenix knew Cano and each Hourly Employee worked more than 40 hours in at least one workweek and/or 12 hours in one workday during the last 3 years because Phoenix recorded their "on the clock" hours via its timekeeping system.

121. Phoenix knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

122. Phoenix knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

123. Phoenix knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather and store other tools and equipment, and wash-up, on its clients' premises "off the clock."

124. Phoenix knew it controlled the Hourly Employees' work procedures.

125. Phoenix knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Phoenix.

126. Phoenix knew the Hourly Employees' mandatory "off the clock" work was integral and indispensable.

127. In other words, Phoenix knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing other tools and equipment, and washing-up) "off the clock" and without compensation.

128. And Phoenix knew it "recorded" only the Hourly Employees' prescheduled shifts under its rounding policy.

129. Phoenix knew the Hourly Employees performed compensable work beyond their prescheduled shifts.

130. Phoenix knew it paid the hourly employees "per diems" that were not reasonably calculated to reimburse them for expenses incurred on behalf of Phoenix.

131. And Phoenix knew it failed to include these "per diems" in the Hourly Employees' regular rates of pay for overtime purposes.

132. Phoenix knew the CWCA, CMWA, and COMPS Orders required it to pay employees, including Cano and the other Hourly Employees, for all hours these employees performed compensable work and all overtime hours at rates of at least 1.5 times their regular rates of pay, based on all remuneration.

133. Phoenix knew it regularly did not authorize and permit Cano and the other Hourly Employees to take *bona fide* rest periods for every four hours worked or major fraction thereof.

134. Phoenix knew it did not provide Cano and the other Hourly Employees additional compensation for their on-duty "rest periods."

135. Phoenix knew it regularly did not authorize, permit, or make available to Cano and the other Hourly Employees duty-free, uninterrupted meal periods during shifts exceeding five hours.

136. Phoenix knew it did not provide Cano and the other Hourly Employees additional compensation for non-compliant "meal periods."

137. And Phoenix knew the nature of the work Cano and the other Hourly Employees performed did not make uninterrupted meal periods impractical under Colorado law.

138. And Phoenix knew Colorado law required it to pay Cano and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek and 12 in a workday.

139. Phoenix knew Cano and the other Hourly Employees regularly worked in excess of 40 hours a workweek and 12 in a workday.

140. Thus, Phoenix knew, should have known, or recklessly disregarded whether it failed to pay Cano and the other Hourly Employees for all hours worked and at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 in a workweek and 12 in a workday.

141. Phoenix's failure to pay Cano and the other Hourly Employees for all hours worked, including overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

142. Phoenix knowingly, willfully, and/or in reckless disregard of Colorado law carried out its unlawful pre/post shift off the clock policy that deprived Cano and the other Hourly Employees of wages, including overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of Colorado law.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA AND COMPS ORDERS
## (CLASS ACTION)

143. Cano brings his CWCA overtime claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

144. Phoenix's conduct violated the CWCA, as implemented by the COMPS Orders. *See* C.R.S. §§ 8-4-101, *et seq.*; 7 C.C.R. 1103-1.

145. At all relevant times, Phoenix was subject to the CWCA and the COMPS Orders because Phoenix was (and is) an "employer" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

146. At all relevant times, Phoenix employed Cano and the other Hourly Employees as its covered "employees" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

147. The COMPS Orders require employers, like Phoenix, to pay non-exempt employees, including Cano and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay, based on all compensation, for all hours worked over 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

148. Cano and the other Hourly Employees are entitled to overtime pay under the COMPS Orders. *See* 7 C.C.R. 1103-1(4.1.1).

149. Phoenix violated the CWCA and COMPS Orders by failing to pay Cano and the other Hourly Employees overtime wages at rates not less than 1.5 times their regular rates of pay, based on

all compensation, for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" before and after their shifts and for denied "meal periods" and "rest periods," for which Phoenix failed to compensate Cano and the other Hourly Employees. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

150. Phoenix's unlawful conduct harmed Cano and the other Hourly Employees by depriving them of the premium overtime wages they are owed.

151. Accordingly, Cano and the other Hourly Employees are entitled to recover their unpaid overtime wages and an automatic penalty of the greater of two times the amount of the unpaid overtime wages or $1,000. *See* C.R.S. § 8-4-109(3)(b)(I); 7 C.C.R. 1103-1(8.1).

152. Because Phoenix's failure to pay these overtime wages was willful, Phoenix is also liable to Cano and the other Hourly Employees for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(3)(b)(II).

153. Finally, Cano and the other Hourly Employees are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.R.R. 1103-1(8.1).

## COUNT II
## FAILURE TO PAY MINIMUM WAGES UNDER THE CMWA AND COMPS ORDERS
## (CLASS ACTION)

154. Cano brings his CMWA minimum wages claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

155. Phoenix's conduct violated the CMWA, as implemented by the COMPS Orders. *See* 7 C.C.R. 1103-1(1.5).

156. At all relevant times, Phoenix was subject to the CMWA because Phoenix was (and is) an "employer" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.6).

157. At all relevant times, Phoenix employed Cano and the other Hourly Employees as its covered "employees" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.5 and 1.6).

158. The CMWA and COMPS Orders require employers, like Phoenix, to pay employees, including Cano and the other Hourly Employees, no less than the minimum hourly wage for all hours worked. *See* C.R.S. § 8-6-116; 7 C.C.R. 1103-1 (1.9 and 3).

159. Phoenix violated the CMWA and COMPS Order by failing to pay Cano and the other Hourly Employees minimum wages for all hours worked, including hours worked "off the clock" and during "meal and rest periods," for which Phoenix failed to compensate Cano and the other Hourly Employees. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

160. Phoenix's unlawful conduct harmed Cano and the other Hourly Employees by depriving them of the minimum wages they are owed.

161. Accordingly, Cano and the other Hourly Employees are entitled to recover their unpaid minimum wages and interest. *See* C.R.S. § 8-6-118.

162. Cano and the other Hourly Employees are additionally entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-6-118.

**COUNT III**
**FAILURE TO PAY EARNED WAGES UNDER THE CWCA AND COMPS ORDERS**
**(CLASS ACTION)**

163. Cano brings his CWCA earned wages claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

164. Phoenix's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq.* \

165. At all relevant times, Phoenix was subject to the CWCA because Phoenix was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

166. At all relevant times, Phoenix employed Cano and the other Hourly Employees as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

167. The CWCA requires employers, like Phoenix, to pay employees, including Cano and the other Hourly Employees, all wages earned, due, and owing on their regular paydays and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

168. Phoenix violated the CWCA by failing to pay Cano and the other Hourly Employees all earned wages for all the hours of work they performed for Phoenix, including overtime wages at the required rate, and hours worked "off the clock" before and after their scheduled shifts, and for "meal periods" and "rest periods" that Phoenix failed to authorize, permit, and/or make available, for which Phoenix failed to compensate Cano and the other Hourly Employees. *See* C.R.S. §§ 8-4-103(1)(a) and 84-109(1); 7 C.C.R. 1103-1(4.1.1, and 5).

169. Phoenix's unlawful conduct harmed Cano and the other Hourly Employees by depriving them of the earned wages they are owed.

170. Accordingly, Cano and the other Hourly Employees are entitled to recover their unpaid earned wages and an automatic penalty in the amount of two times the amount of the unpaid wages or compensation or $1,000, whichever is greater. *See* C.R.S. § 8-4-109(3).

171. Because Phoenix's failure to pay these earned wages was willful, Phoenix is also liable to Cano and the other Hourly Employees for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

172. Finally, Cano and the other Hourly Employees are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

## COUNT IV
## CIVIL THEFT OF WAGES
## (CLASS ACTION)

173. Cano brings his civil theft claim on behalf of himself and the other Hourly Employees pursuant to C.R.C.P. 23.

174. At all relevant times, Phoenix was subject to the CWCA because Phoenix was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

175. At all relevant times, Phoenix employed Cano and the other Hourly Employees as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

176. Phoenix knew it failed to pay Cano and the other Hourly Employees minimum wage and overtime because Phoenix knew they performed work for Phoenix's benefit "off the clock" before and after their scheduled shifts and during "meal periods" and "rest periods" that Phoenix failed to authorize and/or permit, for which Phoenix failed to compensate Cano and the other Hourly Employees.

177. Phoenix's knowing failure to pay minimum wage under the CMWA, constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 18-6-116.

178. \As a result, Phoenix's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

179. Accordingly, Cano and the other Hourly Employees are entitled to the greater of $200 or treble damages. *See* C.R.S. § 18-4-405.

180. Cano and the other Hourly Employees are also entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court. *See* C.R.S. § 18-4-405.

## JURY DEMAND

181. Cano demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Cano, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order certifying a class action pursuant to C.R.C.P. 23;

b. An Order appointing Cano and his counsel to represent the interests of the Hourly Employees;

c. An Order finding Phoenix liable to Cano and the other Hourly Employees for the unpaid overtime wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation of $1,000, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

d. An Order finding Phoenix liable to Cano and the other Hourly Employees for their unpaid earned wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000, plus treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater;

e. An Order finding Phoenix liable to Cano and the other Hourly Employees for their unpaid minimum wages owed under the CMWA, plus interest;

f. Judgment awarding Cano and the other Hourly Employees all unpaid earned wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under Colorado law;

g. An Order awarding attorneys' fees, costs, and expenses;

h. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: August 29, 2025

Respectfully submitted,

**BRIAN D. GONZALES PLLC**

By: *<u>/s/ Brian D. Gonzales</u>*
Brian D. Gonzales
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Phone: (970) 214-0562
bgonzales@coloradowagelaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR CANO**
**& THE HOURLY EMPLOYEES**